IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| ELNORA M. DRAPER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 06-G-1927-NE |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

**MEMORANDUM OPINION**

The plaintiff, Elnora M. Draper, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying her application for Social Security benefits. Plaintiff timely pursued and exhausted her administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. §405(g).

**STANDARD OF REVIEW**

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). To that end this court "must scrutinize the record as a whole to determine if the decision reached

is reasonable and supported by substantial evidence." <u>Bloodsworth</u>, at 1239 (citations omitted).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." <u>Bloodsworth</u>, at 1239.

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish his entitlement for a period of disability, a claimant must be disabled.  The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I).  For the purposes of establishing entitlement to disability benefits, physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R.§ 404.1520(a)-(f).  The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;

(2) whether she has a severe impairment;

(3) whether her impairment meets or equals one listed by the Secretary;

(4) whether the claimant can perform her past work; and

    (5)    whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir.1993); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job." Pope at 477; accord Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner further bears the burden of showing that such work exists in the national economy in significant numbers. Id.

In the instant case, ALJ Earl C. Cates determined the plaintiff met the first two tests, but concluded that while the plaintiff's "degenerative disc disease with no herniation or stenosis; obesity; degenerative changes of the knee; depression; and IQ scores consistent with mild mental retardation" are "severe" impairments, they did not meet or medically equal a listed impairment. [R. 23]. The ALJ found the plaintiff able to perform a significant range of light work and, therefore, was not disabled within the meaning of the Act.

## DISCUSSION

The plaintiff, who was 44 years old at the time of the ALJ hearing, completed high school with all subjects in special education. [R. 331]. She testified that

the can read and write "a little.[1]" [Id.].  For 25 years, the plaintiff worked as a tubing machine operator, but she alleges she became disabled from August 19, 2003, because of chronic pain, depression, mental retardation, arthritis and back problems.  [R. 326, 333].

       The plaintiff claims disability under Listings 12.05B and 12.05C.  Listing 12.05B states that the required level severity for mental retardation is met when testing reveals "[a] valid verbal, performance, or full scale IQ of 59 or less."  20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05B.  On July 5, 2005, the plaintiff was evaluated by John R. Haney, Ph.D., a licensed psychologist.  [R. 315-318].  After evaluation and testing, Dr. Haney concluded that the plaintiff had "limited intellectual and academic skills."  [R. 318].  The Wechsler Adult Intelligence Scale (WAIS-III) was administered to the plaintiff, and resulted in the following scores:

| Verbal | Performance | Full Scale |
|--------|-------------|------------|
| 60     | 62          | 57         |

    Dr. Haney concluded that:

> [t]he full-scale IQ corresponded to below the first percentile.  These scores placed Ms. Draper in the mild range of mental retardation  This is seen as a reasonably accurate estimate of Ms. Draper's current level of intellectual functioning.  She worked slowly, but seemed to have given a good effort.

[R. 317].  Dr. Haney also administered the Wide Range Achievement Test, Revision 3 (WRAT-III).  The plaintiff obtained a third grade reading and spelling level, and a fourth grade arithmetic level.  Dr. Haney concluded that these results "were also a great deal

---

[1] The plaintiff testified that she can read the "little words" in the newspaper.  [R. 332].

below average and were consistent with the obtained full-scale IQ." [R. 317]. "On the basis of test and interview data," Dr. Haney's diagnosis was major depression, recurrent, severe, with psychotic features and suicidal ideation; panic disorder without agoraphobia, and mild mental retardation. [Id.].

ALJ Cates concluded that the plaintiff's "impairments do not meet the requirements of" 12.05B or 12.05C because she "does not have the necessary deficits in adaptive functioning[2] necessary under medical listing 12.05." [R. 18]. This conclusion is not based on substantial evidence. For Dr. Haney to have made a diagnosis of mild mental retardation, he must have already considered deficits in adaptive functioning. The Diagnostic and Statistical Manual of Mental Disorders (Fourth Ed.) states that "Mental Retardation would not be diagnosed in an individual with an IQ lower than 70 if there are no significant deficits or impairments in adaptive functioning." DSM-IV at 40. Dr. Haney's report is uncontroverted medical testimony that the plaintiff suffers from mild mental retardation, with a valid full-scale IQ of 57. Dr. Haney's opinion must be afforded extra weight because he is a specialist and because he performed extensive testing. The ALJ "may not arbitrarily substitute his own hunch or intuition for the diagnoses of a medical professional." Marbury v. Sullivan, 957 F.2d 837, 840-41 (11th Cir. 1992). The ALJ's conclusion that the plaintiff does not have the necessary deficits in adaptive

---

[2] Some of the reasons given by the ALJ that the plaintiff did not have the necessary deficits in adaptive functioning were that: (1) she worked a semi-skilled job for 25 years; (2) she is single and lives alone; (3) she is able to drive a car; (4) she drove herself to the appointment with Dr. Haney, and was able to name the roads used for that trip; and (5) she attends church and cooks two meals a week. [R. 18].

5

functioning amounts to the ALJ "succumb[ing] to the [forbidden] temptation to play doctor and make [his] own independent medical findings."  Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996).  Therefore, the plaintiff has met Listing 12.05B and is disabled within the meaning of the Act.

Even if the plaintiff's IQ were in the 60 to 70 range, the plaintiff is disabled.  Listing 12.05C requires that the claimant have "A valid verbal, performance, or full-scale I.Q. of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function."  Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993)(quoting Listing 12.05C).  When considering whether the plaintiff has a physical or mental impairment imposing significant work-related limitation of function in addition to a low verbal scale IQ, the Commissioner must consider the plaintiff's impairments in combination.  Davis 985 F.2d at 533.  The issue of what constitutes "a physical or other mental impairment imposing additional and significant work-related limitation of function" was addressed in Edwards by Edwards v. Heckler:

> An impairment imposes significant limitations when its effect on a claimant's ability to perform "basic work activities" is more than slight or minimal.  The question under Listing 12.05C, however, is not whether the impairment is in and of itself disabling, thus, "significant" requires something less than severe within the meaning of § 404.1520(c) [of the Commissioner's Regulations].

755 F.2d 1513, 1515 (11th Cir. 1985)(considering whether the presence of chronic obstructive lung disease and exercise induced asthma provided a sufficient additional impairment to meet the second prong of Listing 12.05C.).  The second part of the Listing,

therefore, imposes a less stringent requirement than that imposed by 20 C.F.R. § 404.1520(c). Section 404.1520 sets forth the five-step sequential process by which a claimant's disability is evaluated. Section 404.1520(c) defines "severe impairment" to require that the impairment or combination of impairments significantly limit the claimant's physical or mental ability to do basic work activities.

In addition to a valid IQ score meeting the requirements of Listing 12.05C, a plaintiff must also satisfy the diagnostic description in the introductory paragraph of Listing 12.05C. Listing 12.00A ("If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing.") The introductory paragraph to Listing 12.05C is as follows:

> Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22. The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

Therefore, a claimant must have manifested "significantly subaverage general intellectual functioning with deficits in adaptive functioning" prior to the age of 22 in order to meet Listing 12.05C. In this circuit, it is presumed that a persons IQ remains fairly constant throughout his life and a valid IQ test meeting the Listing criteria creates a rebuttable presumption that the condition manifested itself before age twenty-two. Hodges v. Barnhart, 276 F.3d 1265, 1268-69 (11th Cir. 2001). The Hodges court recognized that

although this circuit had not formally recognized this presumption, it had been implicitly recognized in Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992), that when a claimant presents a valid IQ score meeting the Listing criteria, he is presumptively disabled under the Listing if the other requirements of the Listing have been met. Hodges, 276 F.3d at 1269.

On March 24, 2004, the plaintiff was evaluated by the Commissioner's consulting psychologist, Jon G. Rogers, Ph.D. [R. 267-270]. Dr. Rogers diagnosed pain disorder associated with psychological factors and a depressive disorder, not otherwise specified. [R. 270]. Dr. Rogers's consultative mental examination also assessed the plaintiff as having a Global Assessment of Functioning of 51. [R. 157]. The Global Assessment of Functioning (GAF) Scale is used to report an individual's overall level of functioning. Diagnostic and Statistical Manual of Mental Disorders 32 (4th Edition, Text Revision) ("DSM-IV-TR"). A rating of 51-60 reflects: "**Moderate symptoms** (e.g., flat affect and circumstantial speech, occasional panic attacks) **OR moderate difficulty in social, occupational, or school functioning** (e.g., few friends, conflicts with peers or co-workers.)" DSM-IV-TR at 34 (emphasis in original). Unlike Dr. Haney, Dr. Rogers did not perform an IQ test. In reaching his conclusion that the plaintiff does not have the necessary deficits in adaptive functioning, the ALJ found:

> During her evaluation by Dr. Rogers, the claimant recalled birthdays of family members and where she graduated high school. She was able to recall 3 of 3 objects after 5 minutes. Doctor Rogers reported that the claimant is able to function independently. He opined that the claimant could manage her own financial benefits, should they be awarded.

[R. 18-19]. In his decision, the ALJ failed to report that for the plaintiff's concentration and attention, Dr. Rogers also found:

> Ms. Draper was not able to perform the serial 7's subtraction task. She could not spell the word "world" backward. Three math problems from the WAIS were administered; she correctly answered two of the problems.

[R. 269]. Also, evaluating her fund of information, Dr. Rogers found:

> Ms. Draper could name the President and capitol of the United States. She could not name the Governor but could identify the capitol of Alabama. She could not name the mayor of [her home town]. She did not know the number of weeks in a year; she replied, "250."

[R. 269]. Additionally, in the field of abstraction, Dr. Rogers reported that the plaintiff "could interpret none of the proverbs." [R. 269]. As for her thought process, Dr. Rogers opined that "[s]tream of talk and mental activity were slow. Speech was slow." [R. 270]. Confronted with the valid IQ testing of Dr. Haney, the ALJ chose to make his own independent findings regarding adaptive functioning. If there were some doubt as to the validity of Dr. Haney's opinion, the ALJ could have recontacted Drs. Haney and Rogers for further evaluation and testing. This he did not do.

However, assuming an IQ in the 60 to 70 range, the ALJ's own finding of the "severe" impairments of degenerative disc disease, obesity, degenerative changes of the knee, and depression [R. 23] are sufficient additional impairments to meet Listing 12.05C. As such, the ALJ's finding that the plaintiff did not meet the second prong of 12.05C is not supported by substantial evidence. Because the plaintiff meets the Listing of 12.05C, she is disabled within the meaning of the Act. Once a claimant is found to

suffer from a Listed impairment, vocational factors are irrelevant. Ambers v. Heckler, 736 F.2d 1467 (11th Cir. 1984)(fact that claimant could return to her past work held irrelevant once she met one of the Listings).

## CONCLUSION

In order to find the plaintiff not disabled in the present case, the ALJ rejected the opinion of the only psychological specialist who performed IQ testing on the plaintiff. His finding that the plaintiff does not have the necessary deficits in adaptive functioning necessary under medical listing 12.05 is contrary to the opinion of that specialist, and is not supported by substantial evidence. Therefore, the plaintiff is disabled within the meaning of the Social Security Act.

An appropriate order will be entered contemporaneously herewith.

DONE and ORDERED 28 February 2008.

_____
UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.